UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID WILLIAMS, JR., as Administrator for
the Estate of DEMETRIUS WILLIAMS, deceased,

Plaintiff,

- *against* -

COUNTY OF ORANGE , CORRECTIONAL
MEDICAL SERVICES, INC., DR. NICHOLAS
RENCRICCA, sued in his individual capacity,

Defendants.

03 Civ. 5182 (LMS)

DECISION AND ORDER

This matter is before me for all purposes, including trial, on consent of the parties in accordance with the provisions of 28 U.S.C. § 636(c). Plaintiff David Williams, Jr. ("Plaintiff"), as Administrator for the Estate of Demetrius Williams, deceased (hereinafter the "Deceased"), is suing Defendants County of Orange ("Orange County"), Correctional Medical Services, Inc. ("CMS"), and Dr. Nicholas Rencricca in his individual capacity (collectively, the "Defendants") pursuant to 42 U.S.C. § 1983 and New York State law. Plaintiff alleges that the medical treatment that the Defendants afforded to the Deceased while he was incarcerated at the Orange County Jail constituted deliberate indifference to the Decedent's serious medical needs in violation of his Eighth and Fourteenth Amendment rights, as well as medical malpractice in violation of New York State law. Plaintiff now moves to exclude the proffered testimony of the Defendants' secondary designated expert, Dr. Sheldon Alter, pursuant to Fed. R. Civ. P. 37(c)(1) and Federal Rule of Evidence ("FRE") 403.

1

I.  **BACKGROUND**

   A.  **Relevant Facts**[1]

On September 25, 2002, the Decedent became an inmate at the Orange County Jail. Complaint at ¶ 9. At intake, he reported that he had a history of jaundice (id) and a family history of kidney disease. Watkins Affirmation at Exhibit 3, Expert Report of Plaintiff's designated expert Dr. Robert B. Greifinger (hereinafter "Greifinger Report") at ¶ 13. Thereafter, on January 3, 2003, Plaintiff was diagnosed with hypertension, and blood tests revealed evidence of renal failure.[2] Complaint at ¶ 11. Over the next month, the Decedent's conditioned worsened, and on February 9, 2003, Dr. Rencricca ordered a nephrology consultation.[3] Complaint at ¶ 13. However, the Defendants were unable to immediately arrange for the consultation as CMS and Orange County "lacked adequate arrangements for nephrology consultations." Complaint at ¶ 13. On February 26, 2003, the Decedent was admitted to Arden Hill Hospital and was placed on dialysis due to severe renal failure. Complaint at ¶ 16. He was also diagnosed with HIV infection and hepatitis B. See Greifinger Report at ¶ 31. The Decedent was treated for a bacterial blood infection, a fungal blood infection, hypertension, and gastritis during his stay at Arden Hill. Greifinger Report at ¶ 31. The Decedent remained at Arden Hill for approximately

---

[1] The facts set forth in this section are generally taken from the Complaint (Docket entry 1), the Answers (Docket entries 15-18), the Declaration of Robert B. Greifinger, M.D. (Docket entry 2), the Affirmation of Christopher D. Watkins, Esq. ("Watkins Affirmation") attached to Plaintiff's Notice of Motion to Preclude, and the Affidavit of Debra J. Young, Esq. in Opposition to Plaintiff's Motion to Preclude Defendants' Expert ("Young Affidavit") at Exhibit A, and do not appear to be in dispute.

[2] Dr. Greifinger reports that Dr. Rencricca diagnosed the Decedent with hypertension on January 6, 2003. Greifinger Report at ¶ 17.

[3] Dr. Greifinger states in his report that Dr. Rencricca ordered the consultation on February 5, 2003. Greifinger Report at ¶ 27.

2

two months, during which time the Decedent received treatment from several specialists, including an infectious disease expert who administered HIV medications. See Watkins Affidavit, Exhibit 5, Dr. Mendel's expert report (hereinafter "Mendel Report"), at 3. On May 16, 2003, the prison medical staff treated the Decedent for a mass in his neck, which raised concerns of possible lymphoma as it is a complication of advanced HIV infection. Id. However, because the Decedent was released from the Orange County Jail shortly thereafter, there was insufficient time to perform a biopsy on the mass. Id. The Decedent was therefore advised to have the mass further evaluated by his own physicians upon his return to the community. Id.

B. **Procedural History**

On July 14, 2003, the Decedent filed the instant action against the Defendants. Docket entry 1. On October 3, 2003, the Defendants answered (Docket entries 15-17), and on February 2, 2004, the parties consented to the undersigned having jurisdiction over the instant action for all purposes, including trial. Docket entry 26. On January 14, 2004, the Defendants disclosed that they intended to call Dr. Lawrence Mendel as an expert witness at trial. Watkins Affirmation at ¶ 3. On April 9, 2004, Plaintiff disclosed that they intended to call their own expert witness, Dr. Robert B. Greifinger, and provided Dr. Greifinger's expert report on May 7, 2004. Watkins Affirmation at Exhibit 2. Shortly thereafter, on May 10, 2004, the Defendants provided Dr. Mendel's expert report in accordance with Rule 25(a)(2). Watkin's Affirmation at ¶ 3. Also included in the Defendants' disclosure on May 10, 2004, was an expert report written by Dr. Alter. Id. The Defendants had not previously identified Dr. Alter as a potential witness, and Dr. Alter's report did not include a list of his qualifications or a list of sources that he reviewed in connection with writing the report. Id. In the cover letter that accompanied the

3

Defendants' disclosure on May 10, 2004, the Defendants stated that they would "supplement" Dr. Alter's report "shortly."  Watkins Affirmation at ¶ Exhibit 4.  However, the Defendants never supplemented Dr. Alter's report, and they did not provide Plaintiff with Dr. Alter's qualifications or the sources he relied on in writing his report until November 7, 2005, after Plaintiff filed the instant Motion.  See Young Affidavit at Exhibit A, "Supplemental Expert Disclosure" filed by Defendants on November 7, 2003 ("November 7 disclosure").[4]

On June 24, 2004, discovery was completed, and a trial date was set for September 7, 2004.[5]  See Docket Report, Minute Entry dated June 24, 2004.  Shortly thereafter, on June 29**,** 2004, the Decedent died (Watkins Affirmation at ¶ 2), and after the Court granted a series of extensions for this purpose, Plaintiff's counsel filed a Notice of Motion for an order permitting Plaintiff to be substituted into this action on September 8, 2005.  Docket Entry 29.  The Defendants filed their response on September 26, 2005.  On October 21, 2005, Plaintiff filed the instant Motion to Preclude, and the Defendants filed opposing papers on November 16, 2005.  Plaintiff replied on November 21, 2005.  On December 8, 2005, the undersigned granted the Plaintiff's request to be substituted into this action.

---

[4] On November 7, 2005, the Defendants provided Plaintiff with a Supplemental Expert Disclosure which included: (1) a list of "material in connection with his expert review and report in this matter"; and (2) a copy of Dr. Alter's curriculum vitae, although it is barely legible. Young Affidavit at Exhibit A.

[5] Although Attorney Watkins states in his Affirmation that discovery closed on May 31, 2004 (Watkins Affirmation at ¶ 2), the undersigned extended this deadline to June 21, 2004, during a pretrial conference held on June 8, 2004.  See Docket Report, Minute Entry dated June 8, 2004.

4

## II. Discussion

### A. Rule 37(c)(1)

Fed. R. Civ. P. 26 requires parties to disclose the identity of any person who may provide expert testimony at trial. Fed. R. Civ. P. 26(a)(2)(A). Specifically, Rule 26 provides that this disclosure must be accompanied by a report which:

> shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition withing the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). "[A report is deficient if it] fails to include any of the *underlying conclusions* on which the expert's ultimate opinions are based. Bald conclusions on the ultimate issues do not alone amount to a 'detailed and complete written report' of the expert's expected testimony." Giladi v. Strauch, 94 Civ. 3976 (RMBHBP), 2001 WL 388052, at *5 (S.D.N.Y. 2001) (citing Rule 26(a)(2)(B)) (alterations in original) (emphasis in original). Rule 26 disclosures are required to be made "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). Further, Rule 26 provides that, absent any specific direction from the court or any stipulations by the parties, expert disclosures must be made at least 90 days prior to a scheduled trial date. Id.

Fed. R. Civ. P. 37(c)(1) provides in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

Rule 37(c)(1) is "self-executing," and the exclusion of undisclosed information is automatic

5

unless the non-disclosing party sustains its burden of showing that the failure to disclose was either substantially justified or harmless. See Atkins v. County of Orange, 372 F.Supp.2d 377, 395 (S.D.N.Y. 2005) (citations omitted); Norbrook Laboratories Limited v. G.C. Hanford Manufacturing Co., 297 F.Supp.2d 463, 480-81 (N.D.N.Y. 2003) (" 'Rule 37(c)(1)'s preclusionary sanction is 'automatic' absent a determination of either 'substantial harm' or 'harmlessness.' ") (citations omitted). Under Rule 37(c)(1), " '[s]ubstantial justification means 'justification' to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.' " Norbrook, 297 F.Supp.2d at 481 (citing Henrietta D. v. Giuliani, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 1001) (quoting Ngyen v. IBP, Inc., 162 F.R.D. 675, 680 (D.Kan. 1995)). A failure to comply with Rule 26(a)(2) is considered to be harmless when the party entitled to the expert disclosure has not been prejudiced. Norbrook, 297 F.Supp.2d at 481. Despite the self-executing nature of Rule 37(c)(1), the decision to impose sanctions under this rule is discretionary, and preclusion is generally not ordered. Atkins, 372 F.Supp.2d at 396; DiPirro v. USA, 43 F.Supp.2d 327, 340 (W.D.N.Y. 1999) (noting that preclusion of expert testimony is a "drastic remedy" that should only be applied in cases where the parties exhibit "flagrant bad faith and callous disregard for the requirements of Rule 26(a)(2)(B).") (citations omitted). Thus, courts generally do not preclude experts from testifying unless there has been a finding that the party's failure to comply with the rules was "unjustified and prejudicial." Id (citations omitted).

     Plaintiff argues that Dr. Alter's testimony should be precluded because the Defendants have failed to comply with the Rule 26(a)(2) expert disclosure requirements, and the Defendants have not shown that their failure was substantially justified or harmless. In opposition to

Plaintiff's Motion, the Defendants argue that they were substantially justified in failing to timely comply with Rule 26(a)(2) because the Decedent's death in June, 2004, effectively "stay[ed] all proceedings in this matter, including any deadlines for supplementing any expert responses." Defendants' Opposition at 2. Additionally, the Defendants contend that Plaintiff has not been prejudiced because he received all of the expert discovery to which he was entitled under Rule 26(a)(2) on November 7, 2005, well in advance of the re-scheduled trial date of January 24, 2006. Defendants' Opposition at 3. In any event, the Defendants contend that they have complied with the deadlines set forth in Fed. R. Civ. P. 26(e)(1), which applies to supplemental expert discovery and calls for disclosure no later than thirty days prior to trial.[6] Defendants' Opposition at 2, n.1 (citing Rule 26(e)(1)). Finally, the Defendants argue that no evidence has been presented to support a finding that they acted in bad faith or that they disregarded the requirements of Rule 26. Defendants' Opposition at 3.

First, I find that the Defendants have failed to comply with the expert witness disclosure requirements set forth in Rule 26(a)(2), and that Rule 26(e)(1) does not apply to the expert discovery at issue in this Motion. It is undisputed that the Defendants did not disclose Dr. Alter's qualifications or the sources he reviewed in connection with writing his expert report prior to the last discovery deadline on June 21, 2004.[7] Watkins Affirmation at ¶ 3; Young

---

[6] In their Opposition, as well as the November 7 disclosure, the Defendants characterized the disclosed information as "supplemental" expert disclosure, or in the alternative, "background information."

[7] This Court set discovery deadlines, which explicitly included compliance with Rule 26(a)(2). See e.g. docket entries, 8 and 28; Docket Report, Minute Entries for Proceedings Interim Pre-Trial Conferences held on June 8, 2004, and June 24, 2004; But see R.C.M. v. Rols Capital Co., No. 93 Civ. 8571 (JGK), 1996 WL 30457, at *1 (S.D.N.Y. 1996) (comprehensive discovery deadline "necessarily encompassed designation and discovery of experts . . ." even

7

Affidavit at ¶ 3. Even if the Court had not set definitive discovery deadlines, the Defendants also failed to disclose the required expert discovery before the default deadline set forth in Rule 26(a)(2)(C), which is ninety days prior to the scheduled trial date. Moreover, the Defendants' argument that they complied with the supplemental expert discovery deadline set forth in Rule 26(e)(1) misses the mark.[8] The information contained in the November 7 disclosure is not supplemental as the Defendants contend, but is required to be disclosed under Rule 26(a)(2) "at the times and in the sequence directed by the court" (Rule 26(a)(2)(C)). Thus, the Defendants were required to disclose the information prior to the January 21, 2004, discovery deadline. Additionally, Rule 26(a)(2)(B) The Defendants' "piecemeal disclosure" is not consistent with the terms of Rule 26(a)(2)(B). See Giladi, 2001 WL 388052, at * 8.

Second, I find that the Defendants' failure to comply with the disclosure requirements of Rule 26(a)(2), as well as the order of this Court respecting the completion of pretrial discovery, was not substantially justified. Pursuant to Rule 26 and the Court's discovery deadlines, the

---

though identification of experts was not explicitly included).

[8] Rule 26(e)(1) provides, in relevant part:

> A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . . With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) . . . any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Under Rule 26(a)(3), pretrial disclosures are to be made thirty days before trial, unless otherwise directed by the court.

Defendants were required to disclose all expert discovery to Plaintiff by June 21, 2004, nearly one week prior to the Decedent's death. Thus, the Defendants' argument that they were justified in ignoring the Rule 26 disclosure requirement due to delay in the proceedings caused by the Decedent's death is without merit. Moreover, the Defendants do not attempt to justify their failure to make the required expert disclosures prior to June 21, 2004, and they also never requested the Court to extend this deadline.

Finally, the Defendants failure to make timely disclosures was not harmless. Dr. Alter's expert report, which was provided to Plaintiff on May 10, 2004 (Watkins Affirmation at Exhibit 4), does not provide a "complete statement of all opinions to be expressed and the basis and reasons therefore . . . ." Rule 26(a)(2)(B). Dr. Alter's expert opinion consists of the following:

> . . . the modest delay in renal consultation had no effect whatever on the patient's ultimate need for dialysis as the renal involvement with HIV disease is a rapid, non-reversible entity and the end stage occurrence would have been inevitable regardless of the timing of his renal consultation. The contribution of the hepatitis B to his renal problem is problematical [sic], but would have the same implications with respect to irreversibility. . . . The case is that of a gentleman with two diagnoses, certainly pre-existing his admission to jail with inevitable outcome of hemodialysis.

Alter Report at 2. Dr. Alter comes to this conclusion after a cursory review of what appears to be the Decedent's medical history, although Dr. Alter fails to reference any documents or information he relied on in making his observations of the Decedent. Even taking into consideration the Defendants' subsequent November 7 disclosure, the report, which was never amended or supplemented by the Defendants, fails to identify which portions of the materials he considered in reaching his opinions. In sum, Dr. Alter's vague report does not set forth a sufficient "basis and reasons" to support his opinion. Thus, I find that his report fails to meet the clear requirements of Rule 26(a)(2). I further find that this deficiency has prejudiced Plaintiff

9

because at this late date, Plaintiff still lacks specific information regarding Dr. Alter's expert opinion. See e.g. Giladi, 2001 WL 388052, at *6 ("There is no reason why Defendants should be compelled to complete the foregoing tasks on an expedited basis because plaintiff has chosen to ignore his discovery obligations.").

Even after a finding that the non-disclosing party has failed to satisfy either the substantial justification or harmless exception to the disclosure requirement under Rule 26(a)(2), the Second Circuit has cautioned against automatically precluding the expert's testimony. Giladi, 2001 WL 388052, at *5. Instead, courts must consider four factors before preclusion is ordered:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Giladi, 2001 WL 388052, at *5 (citing Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)).

First, as stated above, the Defendants' explanation for not timely complying with Rule 26(a)(2) is not sufficient. Second, precluding the testimony of Dr. Alter will not render a "fatal blow" to the Defendants' case (see Giladi, 2001 WL 288052, at *6). As will be discussed more fully in the next section, the Defendants' principal expert, Dr. Mendel, will testify to the same conclusion that Dr. Alter reached regarding the effect of the delay in arranging for a nephrology consult for the Decedent. See Mendel Report at 4 ("[B]y this time the renal disease had been present for some time and it is doubtful that the waiting time was a factor in the outcome."); Compare Alter Report at 2 ("[T]he modest delay in renal consultation had no effect whatever on

10

the patient's ultimate need for dialysis as the renal involvement with HIV disease is a rapid, non-reversible entity and the end stage occurrence would have been inevitable regardless of the timing of his renal consultation."). Third, Plaintiff has been prejudiced. As discussed above, the trial in this matter is scheduled to begin in approximately six weeks, on January 24, 2006, and Plaintiff only has a deficient expert report from which to prepare a cross examination of Dr. Alter. Finally, I find that a continuance to allow the Defendants to supplement Dr. Alter's report is inappropriate due to the lengthy delay that has already occurred in this case. Additionally, Dr. Alter's testimony is cumulative of Dr. Mendel's proposed testimony and, as will be discussed infra at Section II.B., should also be precluded on the ground that it is unfairly prejudicial. Therefore, I grant Plaintiff's Motion to Preclude under Rule 37(c)(1) as the Defendants failed to comply with Rule 26(a)(2), and such failure was both unjustified and prejudicial.

B.  FRE 403

Even if this Court were to deem Dr. Alter's testimony to be admissible, it can still be excluded under FRE 403. See Mengele v. Patriot II Shipping Corp., 99 Civ. 8745 (LTS)(KNF), 2002 WL 237847, at *1 (S.D.N.Y. 2002). "Rule 403 excludes relevant evidence where its probative value is 'substantially outweighed' by considerations of, *inter alia*, 'needless presentation of cumulative evidence.' " Colon v. Molina, 199 F.Supp.2d 53, 96 (S.D.N.Y. 2001) (citing FRE 403). A district judge has discretion to exclude relevant evidence that is cumulative of evidence that is already in the record. Id (citations omitted); see USA v. Jamil, 707 F.2d 638, 643 (2d Cir. 1983) ("Evidence is cumulative when it replicates other evidence, and the exclusion of relevant, but cumulative, evidence is within the discretion of the trial court."). This rule applies to the admission of expert testimony (id), and the " 'trial judge has broad discretion in the

matter of admission or exclusion of expert evidence, and his [or her] action is to be sustained unless manifestly erroneous.' " F.H.Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1257 (2d Cir. 1987) (citations omitted).

Plaintiff seeks to preclude testimony from Dr. Alter on the additional ground that his testimony is cumulative. Specifically, Plaintiff argues that Dr. Alter's proposed testimony relates to the same issues as the proposed testimony of the Defendants' principal expert, Dr. Mendel, and that the conclusions reached by Dr. Mendel and Dr. Alter are essentially the same. Plaintiff's Memorandum at 6. The Defendants argue that Dr. Mendel and Dr. Alter will testify regarding distinctly different aspects of this case: Dr. Mendel will primarily discuss whether the care provided to the Decedent at Orange County constituted deliberate indifference, while Dr. Alter will testify to the narrow issue of whether the delay in obtaining a nephrology consultation caused the Decedent to be hospitalized, and to undergo dialysis. Defendants' Opposition at 5.

For the following reasons, I find that Dr. Alter's proposed testimony is cumulative and should be excluded as unfairly prejudicial. Dr. Alter's report does not provide the Court with an opinion that is distinct from the expert testimony proffered by the Defendants' principal expert, Dr. Mendel. Rather, Dr. Alter merely repeats Dr. Mendel's portion of his opinion that the delay in ordering the nephrology consultation did not affect the ultimate outcome of the Decedent's medical condition deteriorating so much that he required dialysis, as well as an extended stay in the hospital. The primary effect of Dr. Alter's testimony would be to buttress Dr. Mendel's testimony regarding the Decedent's medical condition, not to provide the jury with additional information from which they could make their findings. See USA v. Walker, 910 F.Supp. 861, 863 (S.D.N.Y. 1995) (evidence that will only duplicate the testimony of another expert witness is

"simply cumulative" and therefore inadmissible under FRE 403) AUSA Life Insurance Co. v. Dwyer, 899 F.Supp. 1200, 1203 (S.D.N.Y. 1995) ("Our Individual Rules state that we will permit each side to put on only one expert witness in any particular area of expertise. . . . This requirement is designed to eliminate duplicative testimony and to avoid giving an advantage to the side that can afford the most expert witnesses.") (citing FRE 403). Thus, Dr. Alter's testimony is inadmissible under FRE 403, and accordingly, I find that Plaintiff's Motion to Preclude under FRE 403 is granted.

## III. CONCLUSION

For the foregoing reasons I conclude that Plaintiff's Motion to exclude the proffered testimony of Defendants' secondary designated expert, Dr. Alter, is GRANTED.

**SO ORDERED.**

Dated: December 13, 2005
White Plains, New York

Respectfully Submitted,

LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

13